UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                        HON. ARTHUR J. TARNOW

                                                CASE NO. 13CR20198-1

    v.

DONSHAE DIEGO HARRELL

        Defendant.
_____/

KEVIN MULCAHY                                   KEVIN S. BESSANT
Assistant United States Attorney               Attorney for Defendant
211 W. Fort Street                                   23358 Gratiot Ave.
Suite 2001                                                Eastpointe, MI 48226
Detroit, MI 48226                                313-658-8159
(313) 226-9100

_____

**DEFENDANT DONSHAE HARRELL'S MOTION TO MODIFY SENTENCE TO HOME CONFINEMENT DUE TO THE DANGERS OF COVID-19 AND "EXTRODINARY AND COMPELLING REASONS" PURSUANT TO 18 U.S.C. §3582(c)(1)(A)(i)**

## I.    INTRODUCTION

      Defendant, DONSHAE HARRELL, by and through his counsel, KEVIN S. BESSANT, moves this honorable Court for a modification of Defendant's sentence and order of release to home confinement to protect the health and safety of Mr. Harrell and of the entire community due to the dangers of COVID-19. COVID-19 is a dangerous virus spreading rapidly across the world. The United States as a whole, as well as the Bureau of Prisons is facing a pandemic, where as of April 25, 2020, there are now over 730 federal inmates infected with COVID-19 and 317 BOP staff infected, with over 26 inmate deaths attributed to the COVID-19 disease.[1] These numbers continue to spike and increase daily. Continued incarceration puts Mr. Harrell at

---

[1] https://www.bop.gov/coronavirus/ updated accounting of COVID-19 and BOP Statistics as of 04/25/2020.

heightened risk of contracting the virus due to the conditions of confinement at the Danbury Federal Corrections Institution in Danbury, Connecticut and Mr. Harrell's health.

Mr. Harrell is currently an inmate at the Danbury Federal Correctional Institution in Danbury, CT. To date, not only has the state of Connecticut been severely affected by the COVID-19 virus, but the Danbury correctional facility itself has incurred an outbreak of the virus resulting in an inmate's death; over 5 inmate confirmed cases; and over 32 staff confirmed cases all attributable to COVID-19[2], including several inmates on Mr. Harrell's cell block now sick and infected. According to Mr. Harrell, the prison is currently on lockdown, however Mr. Harrell faces a heightened risk of not only contracting the virus, but also potential death from the virus as he suffers from diabetes, high blood pressure/hypertension, and high cholesterol, as documented by the BOP. To treat his conditions, Mr. Harrell is prescribed several medications including Lisinopril (High Blood Pressure), Atovastatin (High Cholesterol), and Metformin (Diabetes). Continued incarceration during this deadly pandemic would not only harm public safety, but it also violates Mr. Harrell's Due Process rights under the Fifth Amendment as well as the Eighth Amendment prohibition on cruel and unusual punishment and the Sixth Amendment right to counsel. Furthermore, continued detention violates Mr. Harrell's basic human rights, including the prohibition on cruel, inhuman, and degrading treatment guaranteed by Convention Against Torture (CAT) and the International Covenant on Civil and Political Rights (ICCPR). **Specifically, however for the purposes of this motion Mr. Harrell is requesting a modification of his sentence under the non-violent offender status of the First Step Act (2018) seeking a compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A)(i).**

II.     FACTUAL BACKGROUND

**A. Changed Circumstances: Covid-19 Pandemic**

We are facing a serious and urgent public health crisis. On March 11, 2020, the World Health Organization officially classified COVID-19, a new strain of coronavirus, as a global

---

[2] https://www.bop.gov/coronavirus/ id.

2

pandemic.[3] On January 21, 2020, Washington State announced the first confirmed case of coronavirus in the United States.[4] As of April 25, 2020, COVID-19 has infected over 895,766 people across the United States, leading to at least 50,349 deaths.[5] On Tuesday March 10, 2020 Governor Gretchen Witmer declared a state of emergency in Michigan as a result of the Covid-19 crisis. President Donald J. Trump declared a national emergency on March 13, 2020. On April 23, 2020, the Department of Justice (DOJ) addressing the spread of COVID-19 within the BOP stated:

> "[Bureau of Prisons] is at this time prioritizing for consideration those inmates who either (1) have served 50% or more of their sentences, or (2) have 18 months or less remaining in their sentences and have served 25% or more of their sentences," the filing said. "As BOP processes the inmates eligible for home confinement under these criteria and learns more about the COVID-19 pandemic and its effect on BOP facilities, it is assessing whether and how to otherwise prioritize consideration."[6]

Additional protective measures have been taken since these dates including the closing of schools, canceling all large gatherings, and implementing several "Stay Home, Stay Safe" nationwide executive orders. In the State of Connecticut where Mr. Harrell is incarcerated, it has been designated a "hot spot" for COVID-19, as there have been over 24,582 confirmed cases of COVID-19 and 1,862 deaths in Connecticut alone.[7]

While adults over sixty years old and people with chronic medical conditions are at heightened risk for COVID-19, young, otherwise healthy individuals are not immune from infection. Data from the Centers for Disease Control and Prevention (CDC) shows that nearly 40% of patients hospitalized from coronavirus were 20 to 54 years old.[8] In New York, for

---

[3] *WHO Characterizes COVID-19 as a Pandemic*, World Health Organization (Mar. 11, 2020), at https://bit.ly/2W8dwpS.
[4] *First Patient With Wuhan Coronavirus Is Identified in the U.S.*, The New York Times (Jan. 21, 2020), at https://www.nytimes.com/2020/01/21/health/cdc-coronavirus.html.
[5] *Coronavirus Map: Tracking the Spread of the Outbreak*, The New York Times (April 6, 2020), at https://www.nytimes.com/interactive/2020/world/coronavirus-maps.html (updating regularly).
[6] https://abcnews.go.com/US/doj-clarifies-federal-inmate-release-guidance-confusion-plagues/story?id=70318981
[7] https://portal.ct.gov/OCME/Statistics/CT-COVID-19-Statistics
[8] *Younger Adults Make Up Big Portion of Coronavirus Hospitalizations in U.S.*, The New York Times (Mar. 20, 2020), at https://www.nytimes.com/2020/03/18/health/coronavirus-young-people.html.

example, 18- to 49-year-olds comprise more than half of all cases in the state.[9] With a rising number of cases nationwide indicative of community spread, we must take every necessary action to protect vulnerable populations and the community at large. As one New York court judge recently recognized, "Realistically, the best—perhaps the only—way to mitigate the damage and reduce the death toll is to decrease the jail and prison population by releasing as many people as possible." *United States v. Nkanga*, No. 18-CR-713, 2020 WL 1529535, at *1 (S.D.N.Y. Mar. 31, 2020) (concluding that the court was powerless to provide bail after a prison sentence had commenced despite temporary release being the "rational and right result").

**B. Conditions of Confinement and Spread of COVID-19**

Conditions of confinement create the ideal environment for the transmission of contagious disease.[10] Incarcerated people cycle in and out of detention facilities from all over the country, and people who work in the facilities including correctional officers, and care and service providers leave and return daily, without medical screening. Incarcerated people have poorer health than the general population, and even at the best of times, medical care is limited.[11] According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[12] Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of

---

[9] *Coronavirus Live Updates*, The New York Times (Mar. 22, 2020) at https://www.nytimes.com/2020/03/22/world/coronavirus-updates-world-usa.html (updating regularly).
[10] Joseph A. Bick (2007). Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, *at* https://doi.org/10.1086/521910.
[11] Laura M. Maruschak et al. (2015). Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12. NCJ 248491. Washington, D.C.: U.S. Department of Justice, Bureau of Justice Statistics, *at* https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf

[12] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), *at* https://bit.ly/2W9V6oS.

cases.[13] In China, officials have confirmed COVID-19 spreading at a rapid pace in Chinese prisons, reporting 500 cases.[14]

Governments worldwide are releasing detained people to slow the spread of the virus. Britain plans to grant temporary release to about 4,000 people in prison.[15] France plans to release 5,000 people; and Germany's most populous state will release 1,000 people.[16] Secretary of State Mike Pompeo has called for Iran to release Americans detained there because of the "deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons," noting that "[t]heir detention amid increasingly deteriorating conditions defies basic human decency."[17] Courts across Iran have granted furlough to 100,000 people in prison as part of the measures to contain coronavirus across the country,[18] almost half of the country's entire prison population.[19] Even countries with dysfunctional justice systems, including Afghanistan[20] and Haiti,[21] are releasing or planning to release people from jails and prisons as COVID-19 bears down.

---

[13] *Prisons and Jails are Vulnerable to COVID-19 Outbreaks*, The Verge (Mar. 7, 2020) *at* https://bit.ly/2TNcNZY.

[14] Rhea Mahbubani, *Chinese Jails Have Become Hotbeds of Coronavirus As More Than 500 Cases Have Erupted, Prompting the Ouster of Several Officials*, Business Insider (Feb. 21, 2020) *at* https://bit.ly/2vSzSRT.

[15] Hugo Miller, et al., *EU Ministers Meet on Prison Virus Risks Amid Inmate Releases*, Bloomberg (Apr. 5, 2020), https://www.bloomberg.com/news/articles/2020-04-05/u-k-to-release-up-to-4-000-inmates-as-prison-virus-cases-grow (last visited Apr. 6, 2020).

[16] *Id*.

[17] Jennifer Hansler and Kylie Atwood, *Pompeo calls for humanitarian release of wrongfully detained Americans in Iran amid coronavirus outbreak*, CNN (Mar. 10, 2020) *at* https://cnn.it/2W4OpV7.

[18] Parisa Hafezi, *Iran Extends Prison Furloughs As Coronavirus Death Toll Rises*, Reuters (Mar. 29, 2020), https://www.reuters.com/article/us-health-coronavirus-iran/iran-extends-prison-furloughs-as-coronavirus-death-toll-rises-idUSKBN21G0DV (last visited Apr. 3, 2020).

[19] World Prison Brief, Iran, https://www.prisonstudies.org/country/iran (last visited Apr. 3, 2020).

[20] AFP, *Afghanistan to Release Up to 10,000 Prisoners to Slow Coronavirus Spread,* Yahoo! News (Mar. 26, 2020), https://news.yahoo.com/afghanistan-release-10-000-prisoners-slow-coronavirus-spread-211850224.html.

[21] Caleb Lefèvre, *Covid-19: Special Hearings on the Horizon to Release Inmates*, Le Nouvelliste (Mar. 30, 2020), https://translate.google.com/translate?client=firefox-b-1-d&client=tw-ob&um=1&ie=UTF-8&hl=en&sl=ht&tl=en&u=https%3A%2F%2Flenouvelliste.com%2Farticle%2F214223%2Fcovi

In the United States, Attorney General William Barr recognized that "we are experiencing significant levels of infection at several of our [Bureau of Prisons] facilities."[22] Because these "emergency conditions" are "materially affecting the functioning of the Bureau of Prisons," the Attorney General directed the Bureau to "expand the cohort of inmates" eligible for release: "Given the speed at which this disease has spread through the general public, it is clear that time is of the essence."[23] Similarly, the State of California is planning to release 3,500 people from prisons to slow the spread of the coronavirus.[24] New York City has released about 1,000 people from jails to date.[25] Similarly, jurisdictions around the country are refusing the admission of individuals arrested on non-violent misdemeanor charges in order to reduce jail populations.[26] State courts across the country have instructed judges to release people from prison and reconsider detention in the face of this global pandemic. *See, e.g., Karr v. State*, No. A-13630, 2020 WL 1456469, at *3 (Alaska Ct. App. Mar. 24, 2020) ("[C]ourts must now balance the public health

---

d-19-des-audiences-speciales-a-lhorizon-pour-liberer-des-detenus (last visited Apr. 3, 2020); Margaret L. Satterthwaite (@SatterthwaiteML), Twitter (Mar. 30, 2020, 4:46PM), https://twitter.com/SatterthwaiteML/status/1244727743520129029.

[22] Office of the Attorney General, *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020) at 1, available at https://www.politico.com/f/?id=00000171-4255-d6b1-a3f1-c6d51b810000.

[23] *Id*. at 1-2.

[24] Paige St. John, *California to Release 3,500 Inmates Early as Coronavirus Spreads Inside Prisons*, Los Angeles Times (Mar. 31, 2020), https://www.latimes.com/california/story/2020-03-31/coronavirus-california-release-3500-inmates-prisons.

[25] Stephen Rex Brown & Chelsia Rose Marcius, *NYC district attorneys alarmed by accounts of horrible conditions at Rikers amid coronavirus outbreak*, N.Y. Daily News (Apr. 6, 2020), https://www.nydailynews.com/new-york/ny-district-attorneys-rikers-conditions-20200406-rdjvtuwfsndqtmzuit3t66bkhq-story.html.

[26] *See generally*, *Responses to the COVID-19 pandemic*, Prison Policy Initiative, https://www.prisonpolicy.org/virus/virusresponse.html (last updated Apr. 6, 2020).

safety risk posed by the continoued incarceration of pre-trial defendants in crowded correctional facilities with any community safety risk posed by a defendant's release. Additionally, courts must re-evaluate the flight risk and safety risk posed by releasing a defendant into a community which now has fewer open businesses, fewer opportunities, for travel, and more people staying at home.");27 Mem. from Mike McGrath, Chief Justice, Mont. Sup. Ct., to Montana Courts of Limited Jurisdiction Judges (Mar. 20, 2020) ("Because of the high risk of transmittal of COVID-19, not only to prisoners within correctional facilities but staff and defense attorneys as well, we ask that you review your jail rosters and release, without bond, as many prisoners as you are able, especially those being held for non-violent offenses.");28 Mem. from Chief Justice Beatty, S.C. Sup. Ct., to Magistrates, Municipal Judges, and Summary Court Staff (Mar. 16, 2020) ("Any person charged with a non-capital crime shall be ordered released pending trial on his own recognizance without surety, unless an unreasonable danger to the community will result or the accused is an extreme flight risk.").29

Likewise, as a result of the pandemic, individual judges have begun granting bail and modifying sentences where the law allows them to do so. *See, e.g., United States v. Chandler*, No. 1:19-CR-867 (PAC), 2020 WL 1528120, at *2 (S.D.N.Y. Mar. 31, 2020); *Stephens*, 2020 WL 1295155, at *3; *Davis*, 2020 WL 1529158, at *3; *Matter of Extradition of Toledo Manrique*, No. 19-MJ-71055-MAG-1 (TSH), 2020 WL 1307109, at *1 (N.D. Cal. Mar. 19, 2020). Indeed, courts continue to find pretrial release necessary "for the compelling reason that it will protect Defendant, the prison population, and the wider community during the COVID-19 pandemic" –- "[e]ven if Defendant did not have a heightened susceptibility to COVID-19." *United States v. Kennedy,* No. 18-20315, 2020 WL 1493481, at *4 (E.D. Mich. Mar. 27, 2020), *reconsideration denied*, No. 18-

---

27 https://appellate-records.courts.alaska.gov/CMSPublic/UserControl/OpenBailDocument?caseNumber=A13630.
28 https://courts.mt.gov/Portals/189/virus/Ltr%20to%20COLJ%20Judges%20re%20COVID-19%2003202020.pdf?ver=2020-03-20-115517-333.
29 *Available at* https://www.sccourts.org/whatsnew/displaywhatsnew.cfm?indexID=2461.

20315, 2020 WL 1547878 (E.D. Mich. Apr. 1, 2020); *see also United States v. Garcha*, No. 19-CR-00663-EJD-1 (VKD), 2020 WL 1593942, at *3-4 (N.D. Cal. Apr. 1, 2020) (granting bail); *United States v. Barkman*, No. 3:19-CR-52-RCJ (D. Nev. Mar. 17, 2020) (ordering suspension of intermittent confinement as probation condition in light of COVID-19 in order to protect defendant and people in detention facility).30

Furthermore, in cases very similar to Donshae Harrell's where the BOP has denied the "administrative release" of inmates, and where an inmate has "exhausted all other administrative remedies", there have been several instances where federal courts have modified the sentences of inmates and released them to home confinement due to the COVID-19 pandemic where "extraordinary and compelling circumstances" existed. *United States v. Kirk Brannon,* No. 4:15-cr-00080, (Southern District Texas. April 3, 2020).31 *United States v. Resnick,* No. 12-cr-152-cm, (Southern District New York. April, 2 2020).32 *United States v. Latrice Colvin,* No. 3:19 cr-179, (District of Connecticut. April 2, 2020).33 *United States v. Sawicz,* No. 08-cr-287 (ARR)(E.D.N.Y April 10, 2020).34 *United States v. Miller,* No. 16-cr-20222-1 (E.D. Mich. April

---

30 *Available at* https://www.leagle.com/decision/infdco20200318c90.
31 *In United States v. Brannon,* where Brannon was sentenced to 36 months in prison for bank fraud but had his sentenced modified to home confinement due to his health conditions and susceptibility to contract COVID-19, followed by time served and supervised release where defendant showed impeccable conduct in prison, a sound re-entry plan, and a self-quarantine to ensure the health and safety of others.
32 *In United States v. Resnick,* where Resnick was sentenced to 72 months and three years supervised release, Resnick who suffered from diabetes and liver disease, Resnick's motion for compassionate release was granted due to his health condition, his increased risk to contract COVID-19, his age (60), and a valid reentry plan where Resnick would live with his wife who would pick him up from the prison upon release.
33 *In United States v. Colvin,* where Colvin was sentenced to 30 days followed by 2 years supervised release, Colvin who suffered from Type 2-Diabetes, the court considered "extraordinary and compelling circumstances", where the court determined that a person with diabetes face a "higher risk for severe illness" if they contract COVID-19 and reasoned that "home confinement may be more appropriate for certain "at risk" inmates in order to "protect the health and safety of people in our custody".
34 *In United States v. Sawicz,* where Sawicz was sentenced to five years incarceration and a violation of supervised release for child pornography, Sawicz, imprisoned at the same facility as Donshae Harrell, the Danbury Correctional Institution, the Court found that "even where administrative exhaustion is seemingly mandated by statue or decisional law, the requirement is not absolute". The court found that extraordinary and compelling reasons warranted the compassionate release of Sawicz to home confinement by way of the COVID-19 pandemic

9, 2020).35 Mr. Harrell is currently imprisoned at the Danbury Federal Institution where to date there has been one death due to COVID-19, 32 staff infections, and 5 inmates infected by COVID-19.36 Donshae Harrell suffers from Type II Diabetes, High blood pressure, Hypertension, and High Cholesterol in which these ailments have been documented by the Bureau of Prisons. Mr. Harrell has petitioned for and have been denied twice an administrative release for home confinement by the BOP. To date, seeking a compassionate release for extraordinary and compelling circumstances remains Mr. Harrell's only legal remedy for release for both health-related reasons as a result of the COVID-19 Pandemic, and the threat of a serious spread of the virus throughout the Danbury prison facility. Furthermore Mr. Harrell's facility remains on lockdown, with severe limitations to quarantine orders, social distancing, and limited access to his medications within the facility further increasing his susceptibility to contracting COVID-19.

**III.    ARGUMENT**

**A. Statutory Basis for Compassionate Release due to Vulnerability to COVID-19**

18 U.S.C. §3582 provides the statutory foundation for a request for a modification of an imposed term of imprisonment. Where a request for such a modification must first be requested by the Bureau of Prisons, under 18 U.S.C. §3582(c)(1)(A) where upon a motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf, or the lapse of 30 days from the receipt of

---

combined with Sawicz's particularly vulnerability to complications from COVID-19 because of his hypertension.
35 *In United States v. Miller,* where Miller was sentenced to six years in prison and four years of supervised release for conspiracy to distribute and possess with intent to distribute Heroin and Felon in Possession of a firearm, Miller suffered from Coronary Artery Disease, Chronic Pulmonary Disease, Hypertension and Liver Cancer. The BOP denied Miller's administrative release. The court agreed that Miller had exhausted all administrative remedies, and granted Miller a sentence reduction to home confinement due to extraordinary and compelling circumstances for granting compassionate release due to Mr. Miller's health, other cases where courts granted similarly situated inmates a release, and that Miller was at a high risk to contract the COVID-19 virus.
36 https://www.bop.gov/coronavirus/

9

such a request by the warden of the defendant's facility, whichever is earlier, this Court may reduce the term of imprisonment after considering the factors set forth in 18 U.S.C. §3553(a) and if it finds "extraordinary and compelling reasons to warrant such a reduction under 18 U.S.C. §3582(c)(1)(A)(i) and the provisions of the First Step Act. Defendant Harrell is well aware as the Court referenced in *United States v. Raia* that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify a compassionate release, especially considering the BOP's statutory role, and its extensive and professional efforts to curtail the viruses spread"[37]. However "given the BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with §3582(c)(1)(A)(i) exhaustion requirement takes on added and critical importance. And given the Attorney General's directive that BOP "prioritize the use of its statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic" we anticipate that the exhaustion requirement will be speedily dispatched in cases like this one.[38] Under the first statutory requirement, Mr. Harrell's initial administrative request for a release of home confinement was denied by the BOP. Following the denial, Mr. Harrell has exhausted all administrative rights to appeal the denial via a formal request through his social worker and warden of the facility.

**B. Extraordinary and Compelling Reasons to Warrant a Compassionate Release**

Donshae Harrell suffers from a myriad of serious documented health ailments, including diabetes, hypertension/high blood pressure and high cholestrol and that increases his risk of infection of COVID-19 and accentuates his meritorious claim for release. The COVID-19 outbreak, and Mr. Harrell's vulnerability to what appears to be an inevitable infection if he remains incarcerated has radically altered the circumstances which this Court must consider in modifying the sentence of Mr. Harrell. Continued incarceration as opposed to home confinement

---

[37] *United States v. Francis Raia,* 18-cr-00657 (District of New Jersey and No. 20-1033, Third Circuit, April 12, 2020).
[38] *Id.*

10

not only seriously endangers his health and the health of the staff at the Danbury Correctional facility, but it also endangers the community at-large.

Donshae Harrell, age 45, is considered a non-violent offender and was sentenced concurrently to 180 months on Counts I and 2 of his drug possession convictions. To date, Mr. Harrell has served over 50% of his sentence and is scheduled for an early release upon his completion of a Comprehensive Drug Treatment Program (RDAP) and his participation in the Inmate Financial Responsibility Program (IFRP). Since being incarcerated, Mr. Harrell's adjustment while incarcerated has been stellar, as he has received his GED; Completed drug counseling courses and programs; completed several apprenticeships including residential and industrial house keeping, culinary classes, certificates in real estate and marketing, and re-entry programs. Mr. Harrell also received his apprenticeship as a Mental Health Companion Peer Specialist in the BOP, and has maintained steady employment while incarcerated working in the food services division for the past 6 years. Mr. Harrell is not a danger to the community or poses any threat to re-offend or commit any criminal acts upon release. Mr. Harrell has a suitable re-entry program established as he will be living with his sister who is gainfully employed in Detroit, MI and can be supervised remotely by the BOP during his quarantine and home confinement.

Furthermore, taking into account the sentencing considerations under 18 U.S.C. 3553(a), Mr. Harrell has satisfied these conditions as well. The COVID-19 pandemic coupled with Mr. Harrell's severe health issues and susceptibility to contract COVID-19 warrants extraordinary and compelling reasons for his release due to this crisis. Donshae Harrell's continued incarceration not only places grave dangers to himself and the Danbury facility, but as additional inmates are sentenced and incarcerated in the facility who have been out in the community as the corona virus spreads, if they are not symptomatic, they will be brought into the BOP and the Danbury facility, and held with the existing population, potentially bringing COVID-19 into this population and further increasing the likelihood that Mr. Harrell will not only contract the virus

but likely become severely ill or die from its wrath.

The courts have long recognized their responsibility to keep a defendant alive, no matter the charge. "We do not punish those who have not been proven guilty. When we do punish, we do not act cruelly. Continued incarceration of this terminally ill defendant threatens both of these fundamental characteristics of our democracy". *United States v. Scarpa,* 815 F. Supp.88 (E.D.N.Y. 1993)[39]. Donshae Harrell is subject to a tremendous health risk if he remains incarcerated with his host of health ailments. High Blood Pressure/Hypertension alone has an 8.4% mortality rate from COVID-19 among African-Americans of all ages.[40] Although both the BOP and the Government can argue that substantial efforts are being made to quarantine and self isolate inmates, the unavoidable truth is that Mr. Harrell continued incarceration has a significance chance of killing him if not released.

**IV. CONCLUSION**

Donshae Harrell is among the vulnerable population at heightened risk of getting very sick from this illness. COVID-19 has radically altered the factors which this court must consider under 18 U.S.C. §3582 for a compassionate release. Mr. Harrell has presented truthful and significant arguments proving that "extraordinary and compelling reasons" exist favoring a modification of his sentence to home confinement in both the interests of justice and public health. Scientific evidence establishes the risk to Mr. Harrell and the prison community at large if incarceration continues. There is a near certainty that with his health ailments he will become infected with COVID-19 if he remains in custody. A release to home confinement should be ordered immediately and Mr. Harrell will accept whatever restrictions and conditions to his home confinement as this Court and Bureau of Prisons chooses to impose.

---

[39] *In United States v. Scarpa* where pretrial defendant with AIDS facing murder charges was released on bail because of the "unacceptably high risk of infection" and death on a daily basis inside the MCC.
[40] https://www.brookings.edu/blog/fixgov/2020/04/09/why-are-blacks-dying-at-higher-rates-from-covid-19/

12

                                        Respectfully Submitted

                                        s/ Kevin Bessant
                                        Kevin Bessant (P71061)
                                        Attorney for Defendant Donshae Harrell
                                        23358 Gratiot Ave.
                                        Eastpointe, MI 48021
                                        313-658-8159
                                        Email: kevin@kevinbessantlaw.com

Dated: April 25, 2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                       HON. ARTHUR J. TARNOW

                                                    CASE NO. 13CR20198-1

   v.

DONSHAE DIEGO HARRELL

       Defendant.
                                   /

| | |
|---|---|
| KEVIN MULCAHY<br>Assistant United States Attorney<br>211 W. Fort Street<br>Suite 2001<br>Detroit, MI 48226<br>(313) 658-8159 | KEVIN S. BESSANT<br>Attorney for Defendant<br>23358 Gratiot Ave.<br>Eastpointe, MI 48226<br>313-658-8159 |

**CERTIFICATE OF ELECTRONIC FILING WITH COURT**

     I, Attorney Kevin Bessant, certify that on April 28, 2020 the foregoing document was electronically served with the Clerk of the United States District Court, Eastern District, Hon. Arthur J. Tarnow, United States Attorney Matthew Schneider and Assistant U.S. Attorney Kevin Mulcahy via the ECF system and electronic mail.

                                                  Respectfully Submitted

                                                  s/ Kevin Bessant
                                                  Kevin Bessant (P71061)
                                                  Attorney for Defendant Donshae Harrell
                                                  23358 Gratiot Ave.
                                                  Eastpointe, MI 48021
                                                  313-658-8159
                                                  Email: kevin@kevinbessantlaw.com

Dated: April 28, 2020